STATE OF NORTH CAROLINA v. MONTAVIUS ANTOINE JOHNSON

No. COA02-1383

(Filed 2 December 2003)

**1. Constitutional Law— effective assistance of counsel—failure to bring forth affirmative defense**

Defendant did not receive ineffective assistance of counsel in a first-degree murder and armed robbery case even though his counsel failed to bring forth the affirmative defense that he allegedly forecast during opening statements, because: (1) defense counsel did not promise to put on an affirmative defense, but merely admonished the jury to listen carefully to the witnesses and weigh their testimony against other facts; and (2) even if defense counsel's statements were unkept promises, defendant offers no evidence that the opening statements prejudiced the outcome of the trial.

**2. Constitutional Law— effective assistance of counsel—failure to object**

Defendant did not receive ineffective assistance of counsel in a first-degree murder and armed robbery case even though his counsel failed to object to alleged improper questioning of a witness regarding the fact that the victim had a 10-millimeter gun, because: (1) failure to make an evidentiary objection does not necessarily place defense counsel's behavior below an objective standard of reasonableness; and (2) defense counsel's failure to object to the testimony in this case did not fall below an objective standard of reasonableness.

**3. Robbery— armed—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of armed robbery, because: (1) facts in the record on appeal support a reasonable inference that defendant perpetrated each element of armed robbery; and (2) the facts could lead a jury to reasonably conclude that by using a dangerous weapon, defendant took possession of the victim's property and, without his permission, threw some of the victim's possessions out of the car.

**4. Evidence— testimony—extrinsic evidence—witness credibility**

The trial court did not err in a first-degree murder and armed robbery case by disallowing the testimony of a witness who claimed to have seen the prosecution's sole eyewitness assist a prisoner escape from jail because while defendant could have used cross-examination to challenge the eyewitness's credibility, N.C.G.S. § 8C-1, Rule 608(b) prohibits the use of extrinsic evidence, such as the testimony of another witness, to attack a witness's credibility.

Appeal by Defendant from judgment entered 8 February 2002 by Judge Robert P. Johnston in Superior Court, Mecklenburg County. Heard in the Court of Appeals 9 September 2003.

*Bruce T. Cunningham, Jr., for the defendant-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Ralf F. Haskell, for the State.*

WYNN, Judge.

Following his convictions on the charges of first-degree murder and armed robbery, Defendant, Montavius Johnson contends on appeal that (I) his defense counsel prejudicially failed to present an affirmative defense after promising to do so in the opening statement, and object to the improper questioning of Kimberly Pegues; (II) the trial court erroneously denied his motion to dismiss the charge of armed robbery; and (III) the trial court erroneously disallowed the testimony of witness Jimmy Darryl Lasko. After careful review, we hold that Defendant received a trial free from prejudicial error.

The State's evidence tended to show that on 2 July 1999 at approximately 2:30 a.m., Kimberly Pegues met her boyfriend Antonio Baker at a friend's apartment. When Pegues arrived, she noticed that Baker had a 10-millimeter Glock handgun in his pocket. Shortly thereafter, the couple left the apartment and Baker put the gun in his car. The couple then drove their separate cars to a fast food restaurant where Pegues got out of her vehicle to use the phone; Baker remained in his car. Upon returning to her car and backing out of the parking space, Pegues saw Defendant and another person approach Baker's car (later identified as C. J. Toney). Pegues heard someone yell "Give me your shit" and then "I don't have anything, man." Pegues saw defendant rummaging through Baker's car, and observed him throw belongings from Baker's glove box and back seat into the street. Pegues heard a shot and saw Defendant run back to his vehicle. Shortly thereafter, defendant returned to Baker's car and Pegues heard another shot. Baker died from a gunshot wound to the head.

A police investigation uncovered a 10-millimeter shell in Defendant's yard, with markings consistent with having been fired from a 10-millimeter Glock. Defendant was charged with first-degree murder and armed robbery.

At trial, Defendant's counsel made the following statements during his opening statement:

C. J. Toney is the individual who shot both shots that night. That is our contention. And, he is the individual who shot and killed Baker.

Now, what happens in between there is a question of whether Mr. Johnson was trying to prevent that or not. Now remember, whatever Ms. Pegues tells you, we're asking you to pay close attention

to it and look at; because, the positioning of the people is very important; where they were; and, what they may or may not have been doing.

Because, there may have been other reasons why Mr. Johnson was in between Mr. Toney and Mr. Baker. And, we will ask you to consider those reasons, at the appropriate time.

So, listen carefully to this eyewitness testimony and weigh what could have been seen and what could not be seen.

[1] From his convictions on the charged offenses, and sentence to life in prison, Defendant first argues that his counsel's failure to bring forth the affirmative defense that he forecast in his opening statement constituted ineffective assistance of counsel *per se*, in violation of the Sixth and Fourteenth Amendments of the Constitution of the United States. We disagree.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

Defendant argues his counsel's statements in opening were promises to offer evidence that Defendant tried to prevent the shooting for which he was charged. Specifically, Defendant points to the following statement made by his counsel during opening but never developed during trial: "[T]here may have been other reasons why Mr. Johnson was in between Mr. Toney and Mr. Baker. And we will ask you to consider those reasons, at the appropriate time." To augment his ineffective assistance of counsel claim, Defendant offered the following quote from the prosecutor's closing argument:

The defense also made an opening statement. And, in that opening statement, the defense offered to show you that the defend-

ant, Montavius Johnson, tried to prevent the murder of Baker. But what did the evidence show you? I would contend that the evidence showed you that Montavius Johnson did everything but attempt to prevent the murder of Baker.

We disagree with Defendant's characterization of his counsel's opening statements as "promises" to put on an affirmative defense. Rather, defense counsel admonished the jury to listen carefully to the witnesses and weigh their testimony against other facts. Moreover, even if defense counsel's statements were unkept promises, Defendant offers no evidence that defense counsel's opening statements prejudiced the outcome of the trial. Absent evidence establishing to a reasonable probability that the trial outcome would have been different had defense counsel offered the evidence "promised" in the opening, Defendant has failed to satisfy the prejudice prong of his ineffective assistance of counsel claim.

[2] Defendant further argues that defense counsel was ineffective in failing to object to improper questioning of Kimberly Pegues regarding whether Antonio Baker had a 10-millimeter gun. Defendant argues that his counsel should have objected when the prosecutor asked eye witness Pegues the following question: "While you were there, were you aware that Antonio had his 10-millimeter Glock handgun with him?" Defendant contends this question assumed three facts not in evidence: (1) Baker had a gun; (2) the gun was manufactured by Glock and (3) the caliber was 10 millimeters. Defendant further argues that had his counsel objected, the objection would have been sustained and the Motion to Dismiss the armed robbery charge would have been granted. We disagree.

As stated earlier, an ineffective assistance of counsel claim can only succeed if defense counsel's behavior falls below an objective standard of reasonableness and such behavior prejudiced Defendant. *Id.* However, failure to make an evidentiary objection does not necessarily place defense counsel's behavior below an objective standard of reasonableness. *See State v. Gainey*, 355 N.C. 73, 113, 558 S.E.2d 463, 488 (2002) (holding that "counsel's failure to object to these issues [admission of statements, jury instructions and the verdict sheets] at trial cannot be said to fall below an objective standard of reasonableness"). In this case, defense counsel's failure to object to the testimony of Pegues did not fall below an objective standard of reasonableness. Accordingly, Defendant's claim of ineffective assistance of counsel is without merit.

**[3]** Defendant next argues that the trial court erred in denying his motion to dismiss the armed robbery charge for insufficiency of the evidence. We disagree.

"In ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence." *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91 (1997). "[T]he question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense." *State v. Brayboy*, 105 N.C. App. 370, 373-74, 413 S.E.2d 590, 592 (1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Williams*, 133 N.C. App. 326, 328, 515 S.E.2d 80, 82 (1999).

N.C. Gen. Stat. § 14-87 provides that:

Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

Contrary to Defendant's argument, facts in the record on appeal support a reasonable inference that Defendant perpetrated each element of armed robbery. In particular, Pegues testified that she heard someone yell "Give me your shit" and "I don't have anything, man." She also testified that defendant rummaged through the victim's car; the victim's wallet and other personal items were ultimately found strewn outside his car. Prior to the shooting, Pegues said she saw Baker put a Glock handgun in his car. These facts could lead a jury to reasonably conclude that by using a dangerous weapon, Defendant took possession of the victim's property and, without his permission, threw some of the victim's possessions out of the car. This evidence is sufficient to support Defendant's conviction. Accordingly, we uphold the trial court's denial of Defendant's motion to dismiss.

**[4]** Lastly, Defendant asserts that the trial court erred by excluding testimony from defense witness Jimmy Darryl Lasko, who claimed to

have seen the prosecution's sole eye witness, Pegues, assist a prisoner escape from jail. Defendant sought to introduce Lasko's testimony to cast doubt on Pegues' credibility, but the trial court found the evidence irrelevant and proscribed Lasko's testimony.

While Defendant could have used cross-examination to challenge Pegues's credibility, North Carolina statute prohibits the use of extrinsic evidence, i.e., the testimony of another witness, to attack a witness' credibility. N.C. Gen. Stat. § 8C-1, Rule 608(b). Therefore, we uphold the trial court's exclusion of Lasko's testimony.

No error.

Judges TYSON and LEVINSON concur.