STATE OF NORTH CAROLINA v. DEVIN M. LASITER

No. 222PA06

(Filed 4 May 2007)

**1. Jury— denial of motion to remove juror for cause— personal and social ties to law enforcement officers and courthouse personnel**

The trial court did not abuse its discretion in a first-degree murder and attempted robbery with a dangerous weapon case by refusing to remove for cause a prospective juror who had several personal and social ties to law enforcement officers and other courthouse personnel, because: (1) while these officers provided

STATE v. LASITER

[361 N.C. 299 (2007)]

evidence necessary for a complete presentation of the State's case, defendant's culpability was established by civilian witnesses, including a cooperating codefendant who testified on behalf of the State; (2) the credibility of the police officers known to the prospective juror was not at issue and neither received more than a cursory cross-examination by defense counsel; and (3) the prospective juror stated repeatedly that she could be impartial, and the trial judge both witnessed and participated in the voir dire concluding that she could fulfill her duties as a juror.

## 2. Sentencing— attempted robbery—*Blakely* error

The Supreme Court exercised its discretionary powers under N.C. R. App. P. 2 and determined that the trial court's *Blakely* error of sentencing defendant in the aggravated range for his attempted robbery conviction, based on the trial court's finding of the statutory aggravating factor that defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy, was not harmless beyond a reasonable doubt, because evidence was presented that only one other person joined with defendant in committing the offense. The case is remanded to the Court of Appeals for further remand to the trial court so that defendant may receive a new sentencing hearing for the attempted robbery conviction, with instructions to submit any aggravating factors to a jury.

Justice BRADY concurring.

Justice HUDSON did not participate in the consideration or decision in this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 176 N.C. App. 768, 627 S.E.2d 352 (2006), finding no error in defendant's convictions for first-degree murder and attempted robbery with a dangerous weapon which resulted in judgments entered 15 July 2004 by Judge W. Russell Duke, Jr. in Superior Court, Onslow County, but remanding for a new sentencing hearing on the attempted robbery charge. Heard in the Supreme Court 21 November 2006.

*Roy Cooper, Attorney General, by James P. Longest, Jr., Special Deputy Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant.*

STATE v. LASITER

[361 N.C. 299 (2007)]

EDMUNDS, Justice.

[1] Defendant contends the trial court abused its discretion by refusing to remove for cause a prospective juror who had several personal and social ties to law enforcement officers and other courthouse personnel. Because we hold the trial court did not abuse its discretion, we affirm the Court of Appeals.

Defendant was tried non-capitally for first-degree murder and attempted robbery with a dangerous weapon. Summarily stated, the evidence tended to show that defendant, assisted by codefendant Brandon Maynes, beat the victim to death with a baseball bat. A more detailed recitation of the evidence may be found in the Court of Appeals opinion. *See State v. Lasiter*, 176 N.C. App. 768, 627 S.E.2d 352, 2006 N.C. App. LEXIS 675 (Mar. 21, 2006) (No. COA05-777) (unpublished). During juror *voir dire*, defendant exercised all his peremptory challenges before prospective juror Huffman was called. Therefore, when defendant's challenge of Huffman for cause was denied, she sat as a juror. Defendant was found guilty of both offenses and, because the case was not tried capitally, was sentenced to life imprisonment without parole for the murder conviction. In addition, he was sentenced to a consecutive aggravated term of 80 to 105 months for the attempted robbery conviction. Defendant appealed to the Court of Appeals, assigning as error, *inter alia*, the trial court's denial of his challenge for cause to juror Huffman. The Court of Appeals unanimously held the trial court did not abuse its discretion in denying the challenge for cause. *Lasiter*, 2006 N.C. App. LEXIS 675, at *8-9. However, the court remanded the case for a new sentencing hearing because, in imposing sentence for the conviction of attempted armed robbery, the trial court found an aggravating factor, in violation of *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). *Id.* at *12. We granted defendant's petition for discretionary review to consider whether the trial court abused its discretion in denying defendant's challenge for cause.

A prospective juror may be challenged for cause on a number of grounds, including that "the juror . . . [f]or any other cause is unable to render a fair and impartial verdict." N.C.G.S. § 15A-1212(9) (2005). We review a trial court's ruling on a challenge for cause for abuse of discretion. *State v. Kennedy*, 320 N.C. 20, 28, 357 S.E.2d 359, 364 (1987) (citing *State v. Watson*, 281 N.C. 221, 188 S.E.2d 289, *cert. denied*, 409 U.S. 1043, 34 L. Ed. 2d 493 (1972)). A trial court abuses its discretion if its determination is "manifestly unsupported by reason" and is "so arbitrary that it could not have been the result of a rea-

soned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). In our review, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record. *See Wainwright v. Witt*, 469 U.S. 412, 434, 83 L. Ed. 2d 841, 858 (1985).

Our review is deferential because "[t]he trial court holds a distinct advantage over appellate courts in determining whether to allow a challenge for cause." *State v. Reed*, 355 N.C. 150, 155, 558 S.E.2d 167, 171 (2002).

> " 'In doubtful cases the exercise of [the trial judge's] power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.' "

*Id.* (quoting *Wainwright*, 469 U.S. at 434, 83 L. Ed. 2d at 858) (citations omitted).

While responding to the trial court's preliminary questions during *voir dire*, Huffman notified the trial court that she recognized one of the trial prosecutors and the bailiff. Upon further inquiry by the court, she explained that her husband worked as a sergeant at the jail. When the trial court asked if anything about her husband's employment would affect her ability to be fair and impartial, the trial transcript indicates she hesitated before answering, "I don't believe it would." After the trial court responded by pointing out that the question called for a "yes" or "no" answer, she said, "No. No, it wouldn't." The trial court repeated its question, and Huffman again said, "No" and nodded affirmatively when the trial court asked if she was sure.

An assistant district attorney then questioned Huffman, who reaffirmed that, through her husband's work as a bailiff, she knew the other assistant district attorney trying the case. Although her testimony is ambiguous, Huffman reported that she had eaten lunch in the lawyer's lounge with either the assistant district attorney or her husband. She recognized one of the names on the list of potential prosecution witnesses and added that one of the other names "sound[ed] familiar." She stated that the elected sheriff, who was not involved in the trial, was her husband's uncle. When asked by the assistant district attorney if the attendance of any of these people at the trial would impair her ability to be fair and impartial, she said, "No."

STATE v. LASITER

[361 N.C. 299 (2007)]

Huffman was next questioned by defense counsel, whose questions focused on her relationships with law enforcement personnel.

Q. Do you honestly feel that you can sit there, even knowing the way you smiled at [the assistant district attorney] like you recognize him, you dealt with him for lunch or whatever you guys did, do you really feel with all those things in your background or mind you can be absolutely fair to the defendant in this case?

A. Yes.

Q. Why is that?

A. It's my duty to be fair.

Q. You don't think your relationship with [the assistant district attorney] will maybe come into your head over things your husband have told you—pardon me?

A. I don't have a relationship with him. I just know of him.

. . . .

Q. Of course, I'm not trying to give you a hard time. Would you want you as a juror if you were sitting over here?

A. Probably not.

[DISTRICT ATTORNEY]:  Objection.

THE COURT:  Sustained.

Q. Probably not?

THE COURT:  That's an improper question. I can't allow you to ask that question.

A. I mean, I'll try to be as fair as I could.

Q. And that's all we're talking about. Is your ability to be fair somehow affected?

A. Yes. Oh — by my husband, no, no.

Defendant then unsuccessfully challenged Huffman for cause.

Defendant argues that Huffman's connection to law enforcement is substantially similar to that of the prospective juror in *State v. Lee*, 292 N.C. 617, 234 S.E.2d 574 (1977). In that case, which arose and was tried in the city of Wilson, the trial court denied the defendant's chal-

lenge for cause of a prospective juror who was married to a Wilson police officer, knew most of the officers in the Wilson Police Department, was acquainted with the principal investigating officer, and was a member of the Wilson Police Auxiliary. *Id.* at 619-20, 234 S.E.2d at 576. We determined that the juror was "subject to strong influences which ran counter to defendant's right to a trial by an impartial jury" and held the trial court abused its discretion when it denied the challenge for cause. *Id.* at 625, 234 S.E.2d at 579. However, *Lee* is distinguishable from the instant case.

First, our analysis in that case included consideration of the role played during the investigation and at trial by the officers whom the juror knew. *Id.* In *Lee*, Wilson Police Officer Moore, "with whom the juror was acquainted, was an important State's witness. He was not only the State's chief investigating officer, but it was by his corroborative testimony that the State sought to buttress the credibility of its only eyewitness." *Id.* By contrast, in the case at bar, the police officer Huffman knew testified only that he had discovered the victim's body and secured the scene and then described for the jury the location and condition of the body. The officer whose name sounded familiar to Huffman described at trial how he located the victim's residence. While these officers provided evidence necessary for a complete presentation of the State's case, defendant's culpability was established by civilian witnesses, including a cooperating codefendant who testified on behalf of the State. The credibility of the police officers known to Huffman was not at issue and neither received more than a cursory cross-examination by defense counsel. Thus, unlike *Lee*, in which the credibility of the testifying officer was critical, the police testimony here was a formality. "Ordinarily, if the testimony of the witness [with whom the prospective juror has a relationship] will be directed to proof of some formal matter or to some minor facet of the case, there would be no substantial basis for challenge for cause." *State v. Allred,* 275 N.C. 554, 562, 169 S.E.2d 833, 837 (1969).

Second, when questioned, the juror in *Lee* advised defense counsel that she was not sure she could give the same weight to the testimony of a stranger as she would to the testimony of Wilson police witnesses and that she would have a tendency to believe the officers. *Lee,* 292 N.C. at 621, 625, 234 S.E.2d at 576-77, 579. She never forthrightly assured defense counsel that she could be impartial. *Id.* In contrast, Huffman stated repeatedly that she could be impartial.

We acknowledge that Huffman's *voir dire* responses were not entirely consistent and that, depending on the form of the question, some of her answers were not absolute. However, a transcript is an imperfect tool for conceptualizing the events of a trial. We give deference to a trial court's exercise of discretion in allowing or denying challenges for cause because "[t]he trial judge is in a better position to weigh the significance of the pertinent factors than is an appellate tribunal. He has the advantage of seeing and hearing the witnesses, so that he cannot only evaluate their credibility but also can gain a 'feel' of the case which a cold record denies to a reviewing court." *State v. Little*, 270 N.C. 234, 240, 154 S.E.2d 61, 66 (1967); *see State v. Rogers*, 355 N.C. 420, 430, 562 S.E.2d 859, 867 (2002) ("A judge who observes the prospective juror's demeanor as he or she responds to questions and efforts at rehabilitation is best able to determine whether the juror should be excused for cause."); *State v. Jaynes*, 353 N.C. 534, 546, 549 S.E.2d 179, 190 (2001) (" 'The trial court has the opportunity to see and hear a juror and has the discretion, based on its observations and sound judgment[,] to determine whether a juror can be fair and impartial.' " (quoting *State v. Dickens*, 346 N.C. 26, 42, 484 S.E.2d 553, 561 (1997))), *cert. denied*, 535 U.S. 934, 152 L. Ed. 2d 220 (2002).

A trial judge has the difficult but vital responsibility of discerning which prospective jurors can be impartial among a venire that may include some who are eager to elude jury service and others who hope to be selected so as to impose their will upon their peers. The court's navigation between Scylla and Charybdis requires the informed exercise of judicial discretion. Here, whether questioned by the court or by counsel, Huffman always returned to the position that she could be fair. The trial judge both witnessed and participated in the *voir dire* and concluded that Huffman could fulfill her duties as a juror. Nothing in the transcript indicates this decision was arbitrary or capricious. Accordingly, the trial court did not abuse its discretion in ruling that Huffman's familiarity with and connections to police officers and attorneys were not a basis to support defendant's challenge for cause.

[2] The Court of Appeals remanded this case for resentencing on the attempted robbery conviction based on the trial court's *Blakely* error in "making a finding in aggravation that had not been stipulated to by defendant or found beyond a reasonable doubt by the jury." *Lasiter*, 2006 N.C. App. LEXIS 675, at *12. The court did so in reliance on our precedent in *State v. Allen*, in which we held that *Blakely* error is structural error requiring a new trial. *Id.* (citing

*State v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (2005), *withdrawn*, 360 N.C. 569, 635 S.E.2d 899 (2006)). However, we have since reconsidered our *Allen* holding in light of the United States Supreme Court's decision in *Washington v. Recuenco*, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), which states that *Blakely* error is subject to federal harmless error analysis. *See State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 75 U.S.L.W. 3609 (2007).

Accordingly, in the interests of judicial economy, while this case is before us we exercise our authority under Rule 2 of the North Carolina Rules of Appellate Procedure to consider whether the trial court's *Blakely* error was harmless beyond a reasonable doubt. N.C. R. App. P. 2; *see, e.g., Wall v. Stout*, 310 N.C. 184, 202-03, 311 S.E.2d 571, 582 (1984). "In conducting harmless error review, we must determine from the record whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational factfinder would have found the disputed aggravating factor beyond a reasonable doubt." *Blackwell*, 361 N.C. at 49, 638 S.E.2d at 458 (citations omitted).

Defendant received an aggravated sentence for his attempted robbery conviction based on the trial court's finding of the statutory aggravating factor that defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy, pursuant to N.C.G.S. § 15A-1340.16(d)(2), and that this aggravator outweighed any mitigators. Our review of the record and transcripts reveals that at trial, evidence was presented that only one other person joined with defendant in committing the offense. Codefendant Maynes testified that he was present when defendant murdered the victim, and he pleaded guilty to aiding and abetting defendant by covering up the robbery and murder. Although Maynes and defendant afterward told a friend that they had killed someone, the friend did not participate in the planning, execution, or concealment of the crime and was not charged with any related offense. In addition, there was no testimony at trial that the friend was told about the robbery, the offense to which the aggravator in question relates. We find neither "overwhelming" nor "uncontroverted" evidence that would lead a reasonable jury to conclude defendant joined with more than one other person in committing the robbery. *See State v. Hurt*, 359 N.C. 840, 842, 616 S.E.2d 910, 911 (2005) (explaining that joining with *more than* one other person to commit an offense without being charged with conspiracy is a significantly different aggra-

vating factor than joining with only one other person), *vacated in part on other grounds*, 361 N.C. 325, 643 S.E.2d 915 (2007). Accordingly, the *Blakely* error in this case was not harmless beyond a reasonable doubt. We remand this case to the Court of Appeals for further remand to the trial court so that defendant may receive a new sentencing hearing for the attempted robbery conviction, with instructions to submit any aggravating factors to a jury.

AFFIRMED AND REMANDED.

Justice HUDSON did not participate in the consideration or decision in this case.

Justice BRADY concurring.

While I concur in the Court's opinion, I write separately to emphasize how important it is for our trial courts to exercise the greatest of care in protecting a defendant's fundamental right to be tried by an impartial jury. Within the outer limits of a trial court's discretion there are prudential lines which serve as cautionary barriers to alert a trial court of a potential abuse of discretion. These lines were not heeded by the trial court in this case.

So fundamental to the jurisprudence of the Anglosphere is the right to a trial by jury that it is set forth in the Magna Carta, the Declaration of Independence, Article III of the United States Constitution, the Sixth Amendment to the United States Constitution, and in the Constitution of North Carolina. *See, e.g.*, U.S. Const. amend. VI ("In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). Undoubtedly, trial courts represent the first line in the defense of this right in our adversarial system and are therefore granted broad discretion in ruling upon a juror's ability to remain fair and impartial to both the State and defendant. *See State v. Lee*, 292 N.C. 617, 621, 234 S.E.2d 574, 577 (1977) ("Unquestionably the trial judge is vested with broad discretionary powers in determining the competency of jurors and that discretion will not ordinarily be disturbed on appeal." (citations omitted)); *State v. Watson*, 281 N.C. 221, 227, 188 S.E.2d 289, 293 (1972) ("The question of the competency of jurors is a matter within the trial judge's discretion, and his rulings thereon are not subject to review on appeal unless accompanied by some imputed error of law." (citations omitted)), *cert. denied*, 409 U.S. 1043 (1972).

STATE v. LASITER

[361 N.C. 299 (2007)]

It is troubling, however, that the trial court in this case traveled perilously close to the outer limits of its discretion when prudence would have suggested a more conservative course of action. My review of the record indicates that the challenged juror had been married for twenty years to a sergeant with the Onslow County Sheriff's Office, was the elected sheriff's niece by marriage, was well acquainted with one of the assistant district attorneys prosecuting the case because she would have lunch in the lawyer's lounge with her husband and him, personally knew the bailiff and one of the law enforcement officers testifying for the State, and likely knew other witnesses for the State and numerous other members of the Onslow County Sheriff's Office. Additionally, the prospective juror would generally allow her husband to talk about his work at home in order "to release pressure on him." Moreover, as the Court's opinion acknowledges, the juror's responses during *voir dire* appear from the record to have been less than steadfast, such as when she stated "I'll try to be as fair as I could."

The record also reflects that the trial court stated no express reason to deny defendant's motion to dismiss the juror for cause, nor did the trial court state any reason for denying defendant's motion seeking an additional peremptory challenge. While the trial court's failure to articulate its analysis, in itself, does not reflect an abuse of discretion, such a statement would have provided added assurance that these rulings rested upon the thoughtful consideration of the trial court and were not made hastily and without reason.

Of course, prudence would have dictated that the trial court allow defendant's motion to strike the juror for cause, since a failure to do so has needlessly placed the jury verdict in dispute on appeal. From our understanding about basic human nature ever since the fall of mankind in *Genesis* 3, we know that an individual who more closely identifies with one side of a case will likely have difficulty rendering a fair and impartial verdict. Our trial courts should not pit an individual against fallen human nature, even when the individual is committed to the duty of impartiality.

Thus, though it did not go so far as to abuse its discretion, the trial court unnecessarily caused this issue to come before the Court on appeal by failing to follow the dictates of prudence. Accordingly, while I concur fully in the result of the majority opinion, I would urge trial courts in the future to act out of an abundance of caution to protect a right so critical to our system of justice. The people should

expect nothing less from the courts of this state than the vigilant defense of an accused's right to be tried by an impartial jury.