STATE OF NORTH CAROLINA, Plaintiff v. GREGORY JAMAR LEE, Defendant

No. COA07-539

(Filed 1 April 2008)

### 1. Evidence— extrinsic—unrelated matter showing defendant lied—attack on defendant's character for truthfulness

The trial court erred in a prosecution for first-degree murder and other crimes by admitting extrinsic evidence that defendant had lied to a witness about an unrelated matter because it attacked defendant's character for truthfulness in violation of N.C.G.S. § 8C-1, Rule 608(b). However, this error was not prejudicial because it could not be said as a matter of law that absent the error there was a reasonable possibility that the jury's verdict would have been different.

### 2. Jury— voir dire—challenge for cause—personal relationship with witness

The trial court did not abuse its discretion in a prosecution for first-degree murder and other crimes by denying defendant's motion to dismiss a juror for cause based on the fact the juror was once the next-door neighbor of a deputy sheriff who was testifying and also the accountant who prepared that deputy's tax returns because: (1) for the first two years these two individuals were neighbors, they chatted about once a month; (2) the two did not have regular social contact at the time of the trial and interacted about once a year for tax preparation purposes; (3) each time the juror was asked if he could impartially weigh the evidence and render a verdict accordingly, he unequivocally answered yes; and (4) the deputy's testimony was not crucial to the case.

### 3. Appeal and Error— appealability—denial of mistrial—sleeping juror—waiver

Although defendant contends the trial court erred in a prosecution for first-degree murder and other crimes by failing to declare a mistrial ex mero motu based on the fact that one of the jurors had been sleeping during the trial, defendant waived his right to assign error on appeal because the trial court inquired (after the jury was dismissed for lunch following closing arguments) about whether defendant would object to that juror sleeping through almost the whole trial, and defendant stated he wanted to keep her.

Appeal by defendant from judgment entered 17 May 2006 by Judge Ronald L. Stephens in Durham County Superior Court. Heard in the Court of Appeals 15 November 2007.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Jonathan Babb, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*

STROUD, Judge.

Defendant Gregory Jamar Lee appeals from judgments entered upon a jury verdict finding him guilty of first degree murder, attempted robbery with a dangerous weapon, and first degree burglary. Defendant contends that the trial court erred by: (1) admitting extrinsic evidence that defendant had lied to a witness about an unrelated matter, (2) denying defendant's motion to dismiss a juror for cause, and (3) failing to declare a mistrial on the grounds that one of the jurors had been sleeping during the trial. After careful review of the record, we conclude that defendant received a fair trial, free of prejudicial error.

I. Background

At trial, the State presented the following evidence: On 5 June 2002, defendant met Ricky Morris, Jerome Freeman, Marcus Hawley and Michael Sullivan at Sullivan's Durham County home. They traveled to Roxboro, Person County, armed with a .410 shotgun and an SKS rifle ("chopper"), where defendant announced a plan to forcibly enter an auto customizing shop owned by Adam Wolfe, shoot everyone in the shop and take a Cadillac Escalade belonging to Wolfe that defendant had earlier inquired about purchasing. Defendant abandoned that plan when he determined "it was getting too late and . . . there [were] too many people over there." Defendant, Freeman and Hawley went into the Wal-Mart near Wolfe's shop, where defendant purchased ammunition for the .410 shotgun and Freeman purchased ammunition for the chopper.

They drove back to Durham where defendant and Sullivan fired shots at a Cadillac Escalade belonging to a person who allegedly had stolen a large sum of money from defendant. They then drove to defendant's home in Durham County, right across the street from the home of Mrs. Lois Cannady. Morris armed himself with a shotgun from defendant's home at defendant's request. Defendant armed him-

self with the .410 shotgun, and Sullivan armed himself with the chopper. Defendant kicked open the backdoor of Mrs. Cannady's home and entered with his four accomplices. Freeman "peeked" into the room occupied by Mrs. Cannady, and she fired a shot at him. Sullivan returned fire with the chopper, fatally wounding Mrs. Cannady. Defendant and his four accomplices fled from Mrs. Cannady's home and returned to Sullivan's home.

On 3 February 2003, the Durham County Grand Jury indicted defendant for first degree murder, attempted robbery with a dangerous weapon, first degree burglary, misdemeanor larceny, and felonious possession of a stolen vehicle. Defendant was tried before a jury in Superior Court, Durham County, with the jury returning verdicts on 7 September 2005. The jury found defendant guilty of larceny and possession of a stolen vehicle, but did not reach a verdict on the charges of attempted robbery with a dangerous weapon, first degree burglary, or first degree murder. Judgment was continued on the convictions.

Defendant was tried again on the charges of attempted robbery with a dangerous weapon, first degree burglary, and first degree murder from 24 April to 17 May 2006 in Superior Court, Durham County. Defendant testified at trial, asserting as his defenses that he was not armed when the group entered Mrs. Cannady's home, and that he lacked *mens rea*, or criminal intent, on the basis that he had been forced to participate in the crime under duress.

On 17 May 2006, the jury found defendant guilty of first degree murder, attempted robbery with a dangerous weapon,[1] and first degree burglary. Upon the jury's verdicts, the trial court sentenced defendant to life imprisonment without parole for first degree murder and continued judgment on the other two convictions. Defendant appeals.

II. Analysis

A. Admission of Evidence

[1] Defendant first assigns error to the following testimony, elicited on redirect examination by the State from Adam Wolfe, who owned the Roxboro auto customizing shop that defendant had planned to forcibly enter before going to the home of Mrs. Cannady:

---

1. The judgment for attempted robbery with a dangerous weapon contains an obvious typographical error. It states, "def[endant] found not guilty by a jury."

[The State:] Did you say that [defendant] was calling you every day?

[Witness:] Several times [a day].

. . . .

[The State:] About what?

[Witness:] Just kept trying to get me to meet him and talk to his dad [about buying my Escalade].

. . . .

Somebody had called me and said it was [defendant's father] on the phone and that he was trying to see my Escalade and that he was flying out of town and that he wanted to see me before he went out of town so he could make a decision on the truck.

[The State:] Did you end up making that meeting?

[Witness:] I went, and that's when I met [defendant] at Northern [High School] that day, early that morning, and he took me to a— down some gravel road, and nobody was there. It was like an old farmhouse. Then we turned around and came back out. I don't know the name of that road, but we came back out to the inter-section and took anther left and went down to another gravel road, and I felt that—I didn't feel right about the situation, be-cause I knew he had been lying on several occasions, so—

[Defense Counsel:] I'll object and move to strike that.

[The Court:] Overruled. Overruled. Go ahead.

. . . .

[Re-cross examination by defendant.]

. . . .

[Defense counsel:] [Why did you let him in your shop after hours if] you thought that you knew he was lying?

[Witness:] I knew he was lying. There's no doubt about that. Now, that doesn't mean he couldn't get a[n] Escalade. I just knew he was lying about who he was . . . and who his dad was.

Defendant contends that admission of this testimony violated Rule 608(b) of the North Carolina Rules of Evidence. The State con-tends that defendant waived his objection by eliciting the same infor-

mation on re-cross examination, and therefore this assignment of error is not properly before this Court for review. Alternatively, the State contends that the testimony did not violate Rule 608(b), because the testimony was first elicited by the State on re-direct examination and Rule 608 applies only to exclude testimony elicited on cross examination. As a third alternative, the State contends the testimony was admissible under Rule 404(b).

> The well established rule in this State is that when incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost[. However], [t]he rule does not mean that the adverse party may not, on cross-examination, explain the evidence, or destroy its probative value, or even contradict it with other evidence upon peril of losing the benefit of his exception.

*State v. Van Landingham*, 283 N.C. 589, 603, 197 S.E.2d 539, 548 (1973) (citations and quotation marks omitted). The record indicates that defendant questioned Wolfe on re-cross examination about his statement that defendant was lying only for the purpose of attempting to contradict it. He did not thereby waive his objection. We will therefore review this assignment of error.

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

N.C. Gen. Stat. § 8C-1, Rule 608(b). Extrinsic evidence within the meaning of Rule 608 is "[e]vidence that is calculated to impeach a witness's credibility, adduced by means other than cross-examination of the witness." *Black's Law Dictionary* 597 (8th edition, 2004).

The State's argument that Rule 608(b) operates to exclude only testimony which is elicited on cross examination is nonsensical. In fact, a careful reading reveals Rule 608(b) excludes all evidence of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility" *other than* conviction of a

crime and two specific types of testimony elicited on cross examination of the witness. N.C. Gen. Stat. § 8C-1, Rule 608(b); *State v. Morgan*, 315 N.C. 626, 634, 340 S.E.2d 84, 89-90 (1986); *State v. Johnson*, 161 N.C. App. 504, 510, 588 S.E.2d 488, 492 (2003) ("North Carolina [Rule 608(b)] prohibits the use of extrinsic evidence, i.e., the testimony of another witness, to attack a witness' credibility."). The foregoing testimony was not admissible under Rule 608(b).

Next we consider the State's contention that Wolfe's testimony was admissible under Rule 404(b). Specifically, the State contends that taken as a whole, Wolfe's testimony was admissible under Rule 404(b) because it showed intent or motive. However, defendant assigned error not to the whole of Wolfe's testimony, but to the specific statement that "I knew [defendant] had been lying." We discern no other purpose for this testimony than to attack defendant's credibility, which brings it squarely within the prohibition of Rule 608(b) as discussed above. The admission of this testimony was error.

However, an error is reversible, entitling defendant to a new trial, N.C. Gen. Stat. § 15A-1447(a) (2005), only " 'where there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial.' " *State v. Williams*, 322 N.C. 452, 456-57, 368 S.E.2d 624, 627 (1988) (quoting N.C. Gen. Stat. § 15A-1443(a)). Examining the entire record, we find that the State presented testimony from two of the individuals, Jerome Freeman and Ricky Morris, who were present with defendant when Mrs. Cannady was murdered.

Freeman and Morris were also present with defendant in the hours before the crime when defendant went to Wolfe's shop armed with the .410 shotgun and declared his intention to kill everyone at Wolfe's shop in order to take Wolfe's Escalade, which defendant said belonged to him. Freeman and Morris testified that after deciding not to carry out the plan to take Wolfe's Escalade, defendant entered the Wal-Mart near Wolfe's shop to purchase ammunition for the .410 shotgun. They also testified that defendant led the group to Mrs. Cannady's house and that defendant kicked in the door.

This evidence, which directly contradicted defendant's statement that he was not armed when he entered Mrs. Cannady's home, was highly probative circumstantial evidence of defendant's state of mind at the time of the crime and was therefore indirectly more damaging to defendant's credibility than the testimony of Wolfe. We cannot say as a matter of law that absent the erroneous admission of extrinsic

evidence of the specific incident which attacked defendant's character for truthfulness, there is a reasonable possibility that the jury's verdict would have been different. *State v. Graham*, 186 N.C. App. 182, 192-93, 650 S.E.2d 639, 647 (2007). This assignment of error is overruled.

B.  Juror Number 3

[2] Defendant next assigns error to the trial court's denial of his motion to dismiss Juror Number 3 for cause. Defendant argues that because Juror Number 3 was once the next-door neighbor of Deputy Sheriff Barnes, and also the accountant who prepared annual tax returns for Deputy Barnes, Juror Number 3 improperly gave extra weight to the testimony of Deputy Barnes.

> We review a trial court's ruling on a challenge for cause for abuse of discretion. A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision. In our review, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record. Our review is deferential because the trial court holds a distinct advantage over appellate courts in determining whether to allow a challenge for cause.

*State v. Lasiter*, 361 N.C. 299, 301-02, 643 S.E.2d 909, 911 (2007) (citations, ellipses, brackets and quotation marks omitted).

In reviewing whether a juror's personal relationship with a witness deprives the defendant of a fair trial, we consider: (1) the degree of relationship between the juror and the witness, (2) the statements of the witness as to whether or not he could be impartial, and (3) the importance of the witness to the case. *Id.* at 304, 643 S.E.2d at 912; *State v. Lee*, 292 N.C. 617, 625, 234 S.E.2d 574, 579 (1977).

In the case *sub judice*, Juror Number 3 had known Deputy Barnes about five years because Deputy Barnes was a tax preparation client of Juror Number 3, who was an accountant. For the first two years of their relationship, Juror Number 3 and Deputy Barnes had also been neighbors who chatted about once a month. Juror Number 3 and Deputy Barnes did not have regular social contact at the time of the trial and interacted about once a year for tax preparation purposes. Additionally, each time Juror Number 3 was asked if he could impartially weigh the evidence and render a verdict accordingly, he unequivocally answered yes.

Deputy Barnes' testimony in the trial was not crucial to the State's case. He testified that he assisted the lead investigator by asking questions during a pre-arrest interview with defendant and producing a tape of the interview which was played during the State's case-in-chief. He also testified on cross examination about filling out the arrest report, serving a search warrant, and accompanying other officers when defendant was being transported during the investigation. He did not testify as to any of the elements in the crimes for which defendant was being tried, either directly or by corroboration.

On this record, we perceive no abuse of discretion by the trial court in denying defendant's challenge of Juror Number 3 for cause. This assignment of error is overruled.

C. Sleeping Juror.

[3] Finally, defendant contends that the trial court committed reversible error *per se* when it did not conduct an investigation and remove Juror Number 12 *ex mero motu*. He contends that evidence that Juror Number 12 was asleep during part of the trial resulted in violation of his constitutional right to a unanimous verdict of twelve jurors.

Defendant did not move for a mistrial or request an investigation of jury misconduct during the trial. In fact, after the jury was dismissed for lunch following closing arguments, the following colloquy ensued:

> [The Court:] We have a note from a juror. . . . It says . . . "Juror Number 12 has been asleep the whole trial almost. . . ." I'm assuming that the defendant would object to that through counsel, or do you want to talk to your client about that?
>
> . . . .
>
> [Defense Counsel:] May I [step outside and talk with my client] for a minute?
>
> [Defendant confers with counsel outside the courtroom.]
>
> [Defense Counsel:] We just want to keep her, Your Honor.

"Under these circumstances, defendant has waived his right to assign error on appeal." *State v. Najewicz,* 112 N.C. App. 280, 291, 436 S.E.2d 132, 139 (1993); *disc. review denied,* 335 N.C. 563, 441 S.E.2d 130 (1994); *but see State v. Hill,* 179 N.C. App. 1, 25, 632 S.E.2d 777, 792 (2006) (holding that defendant waived appellate review by failing to

object or move for a mistrial on the basis of jury misconduct, but noting that no prejudice appeared in the record); *and State v. Hinton*, 155 N.C. App. 561, 564, 573 S.E.2d 609, 612 (2002) ("Notwithstanding defendant's failure to properly preserve this issue for review, in the interests of justice and pursuant to our authority under N.C.R. App. P. 2, we elect to review the merits of defendant's argument."). This assignment of error is therefore dismissed.

### III. Conclusion

We conclude that defendant waived appellate review of allegations that Juror Number 12 was asleep during the trial. We further conclude that the trial court did not err when it denied defendant's motion to excuse Juror Number 3 for cause. Further, defendant failed to show prejudice resulting from the trial court's erroneous admission of evidence relating to his character for truthfulness. Accordingly, defendant received a fair trial, free of prejudicial error.

No prejudicial error.

Judges TYSON and JACKSON concur.