STATE v. REED

[143 N.C. App. 155 (2001)]

═══════════

STATE OF NORTH CAROLINA v. MICHAEL EUGENE REED, II, Defendant

No. COA99-1574

(Filed 17 April 2001)

**1. Jury— selection—denial of challenge for cause—preservation for appeal**

A first-degree murder defendant preserved his right to bring forward an assignment of error to the denial of a challenge for cause to a potential juror where he used a peremptory challenge to remove the juror, exhausted his peremptory challenges, and renewed his motion to excuse this juror for cause. N.C.G.S. § 15A-1214(h).

**2. Jury— selection—denial of challenge for cause—prejudicial**

The trial court erred by denying a challenge for cause to a potential juror who stated that his financial concerns would weigh on his mind during the trial, would interfere with his ability to listen to the evidence fairly, and "would probably" override his ability to render a decision in accordance with his beliefs if he were the sole juror holding a particular opinion and he could return to work at an earlier time by changing his vote. Statements by jurors indicating that they may be unable to render a fair and impartial verdict must be taken at face value, especially when

there is every indication that the juror's concern is sincere. The error here was prejudicial because defendant exhausted his peremptory challenges and told the court that he would otherwise have peremptorily challenged a different juror.

**3. Appeal and Error— appealability—pretrial motion to suppress—new trial**

A first-degree murder defendant was not entitled to appellate review of the trial court's denial of his pretrial motion to suppress custodial statements where a new trial was granted on other grounds. Defendant will only be entitled to appellate review of the admissibility of the evidence if the State attempts to admit it at the new trial, defendant objects, and the court rules it admissible.

Appeal by defendant from judgments entered 30 March 1999 by Judge J. Marlene Hyatt in Catawba County Superior Court. Heard in the Court of Appeals 13 February 2001.

*Michael F. Easley, Attorney General, by Buren R. Shields, III, Assistant Attorney General, for the State.*

*Mark L. Killian, for defendant-appellant.*

HUDSON, Judge.

Defendant was tried and convicted on two counts of first degree murder and sentenced to two consecutive terms of life imprisonment. Defendant timely appealed. On appeal, defendant raises five assignments of error. We order a new trial.

Defendant's first assignment of error pertains to the jury selection process. The record shows that a prospective juror, Mr. Michael, expressed concern regarding the potential length of the trial and the effect it would have on his financial obligations:

Q. First some of the same questions to you. I hate to keep asking the same questions over but there is no other way of doing it. Are there any particular concerns about any of the questions or statements that have been made here?

A. Only on the time period that would be a possible problem for me.

Q. Four to five weeks long trial.

STATE v. REED

[143 N.C. App. 155 (2001)]

A. Yes.

Q. What concerns you about that?

A. Well, financial obligations for my house payment and stuff and bills. I would not be able to pay them if I am here for that period of time. That would be really on my mind a lot at the time.

Q. Do you think that would be in your thoughts to the point that it would be hard for you to pay attention to the testimony at times in the case?

A. Yes, to a certain degree, for the sooner I get done the sooner able to get back to work and pay my bills and meet my obligations.

Q. Do you think then that might be a factor in your listening to the evidence and deciding the case and deciding the circumstances?

A. It may because, like I said, sooner we get finished, the sooner I would be back to my regular schedule and my financial matter.

Q. You are saying it might become hard for you to pay attention and listen to the evidence for you might become impatient and that might interfere with your ability to be a fair jury?

A. I might not take my time in the whole proceeding. I think it would interfere with that, yes.

Q. Do you think that it might make cause you to come to some quick decision knowing the sooner you do that, the sooner you can leave and go back to work?

A. Actually, you know, sooner done the sooner I get out. It may pose a problem for me.

Q. Do you think that it would impair your ability to listen to the evidence in the case fairly?

A. Yes, I do.

Q. You do?

A. Yes.

Immediately following this exchange, defendant moved to excuse Juror Michael for cause, which motion was denied by the trial court. Counsel for defendant then continued to question Michael regarding

his financial situation. Michael explained that he has a daughter who is eight years old, and that both he and his wife work. He further explained that his wife does not make enough money to pay the bills, and that a month without his earning income would be a hardship on - his family.

Counsel for defendant then questioned Juror Michael regarding a number of issues unrelated to his financial concerns. For example, when asked whether he could render an impartial decision even if defendant did not testify, Michael stated: "I could listen to [the evidence] with an open mind and hear it even though he did not testify or produce any evidence at all and it would not cause me to be more towards the state than to him." When asked whether he would be able to render a verdict in accordance with his personal opinion, even if that opinion differed from the opinion of individuals in his community, Michael stated: "I live with myself and not with the community."

Counsel for defendant then returned to the issue of Michael's financial concerns:

Q. Let me talk about your concern about your financial concern and situation. If you set here for the amount of time and we get to the end of the trial and you were called upon to make the decision, and you have said you don't care what the opinion is of the other jurors, if you were the only one that were of the opinion you held and the case could not be over unless you changed your mind, would you then change due to the pressure of the financial situation you may have?

A. That puts me in a bad spot, you know what I'm saying? That would really have weight on my mind and I really could not tell you what I would do until I was put in that situation. That is what is hard for me.

Q. Well, what you are telling me, do you think that it might or would have some effect?

A. Yes sir . . . madam.

Q. And on your ability to serve?

A. Most definitely, yes.

Q. On your ability to render a decision in accordance with your own beliefs?

STATE v. REED

[143 N.C. App. 155 (2001)]

A. Right, because like I said, I will not be out there doing my job and I will be on the street and walking because I just cannot pay my bills.

Q. Exactly.

A. I would . . . that would make a difference to me really, you know.

Q. We are looking for jurors in this case that can make the decision, the biggest decision any juror can ever be called upon to make.

A. That lot to think about.

Q. And that is one of your concerns, having that weigh on your mind and when you are trying to make that decision?

A. Yes.

Q. You feel that would affect you?

A. I would not want my problems to override my decision.

Q. And you think that it could do that if you were forced to be here that long?

A. It may. It would probably do so.

Defendant then renewed his motion to excuse Michael for cause, which motion was again denied by the trial court.

Defendant argues that the trial court erred in denying his motion to excuse Juror Michael for cause. This assignment of error requires us to answer three questions: (1) whether defendant preserved his right to bring forward this issue on appeal; (2) if preserved, whether the trial court erred in denying defendant's motion to excuse Juror Michael for cause; and (3) whether any such error was prejudicial to defendant.

[1] Defendant preserved his right to bring forward this assignment of error pursuant to N.C.G.S. § 15A-1214(h) (1999). After his motion to excuse Juror Michael for cause was denied, he employed a peremptory challenge to remove Michael from the jury. He then exhausted his peremptory challenges, and renewed his motion to excuse Michael for cause, which motion was denied. These steps satisfy the requirements of the statute.

**[2]** As to whether the trial court erred in denying defendant's motion to excuse Juror Michael for cause, we begin with the statutory mandate that a defendant is permitted to excuse a prospective juror for cause if the juror, for any reason, "is unable to render a fair and impartial verdict." N.C.G.S. § 15A-1212(9) (1999). It is also well-established that a decision to deny a challenge for cause rests in the sound discretion of the trial court. *See State v. Hartman*, 344 N.C. 445, 458, 476 S.E.2d 328, 335 (1996), *cert. denied*, 520 U.S. 1201, 137 L. Ed. 2d 708 (1997). Thus, on appeal, a trial court's decision to deny a challenge for cause will not be disturbed absent a showing of an abuse of that discretion. *Id.*

In the case of *State v. Hightower*, 331 N.C. 636, 417 S.E.2d 237 (1992), our Supreme Court addressed a similar situation arising during the jury selection process. In *Hightower*, the defendant challenged for cause a prospective juror who expressed his concern that the defendant's failure to testify would affect his ability to render a fair and impartial verdict. The juror stated that the defendant's failure to testify would "stick in the back of [his] mind" while deliberating, and that it might hinder his ability to render an impartial decision. *Id.* at 641, 417 S.E.2d at 240. However, the trial court denied the defendant's challenge for cause to this juror. On appeal, the defendant assigned error to the trial court's denial of his challenge for cause. Upon a close examination of the transcript, our Supreme Court concluded that the juror's answers indicated he might have trouble being fair to the defendant if the defendant did not testify. Thus, the Court held the denial of the defendant's challenge for cause constituted error pursuant to both subdivision (8) and (9) of G.S. § 15A-1212. *See id.*

Here, defendant's challenge for cause should have been allowed pursuant to subdivision (9) of G.S. § 15A-1212. Michael stated that his financial concerns would weigh on his mind during the trial, would interfere with his ability to pay attention during the trial, and would interfere with his ability to listen to the evidence fairly. Furthermore, Michael stated that if he were the sole juror holding a particular opinion regarding defendant's guilt, such that changing his vote would result in a unanimous verdict and allow him to return to work at an earlier time, his financial concerns "would probably" override his ability to render a decision in accordance with his own beliefs. This trial did, in fact, last for an entire month. The first day of jury selection occurred on 1 March 1999, and defendant was sentenced on 30 March 1999. Jury deliberations at the guilt phase lasted approxi-

mately five and one half hours and transpired over a period of two days.

After a careful examination of the voir dire transcript, we conclude it was error not to allow the challenge for cause to Juror Michael. Statements by a juror indicating that the juror may be unable to render a fair and impartial decision must be taken at face value. This is especially so where, considered in context, there is every indication that the juror's concern regarding his ability to act as a fair and impartial member of the jury is sincere. Here, had Juror Michael simply been seeking to provide responses that would cause him to be excused from the jury, it seems unlikely that he would have provided such strong, affirmative responses to other questions regarding his ability to follow the law and his ability to come to a decision without allowing outside influences to affect his judgment. Despite his apparent recognition that outside matters should not affect a juror's decision, Michael conceded in a forthright manner that his financial concerns might affect his ability to render a fair decision. The primary goal of the jury selection process is to ensure both the defendant and the State that persons chosen to decide the guilt or innocence of the accused will render a fair and impartial decision, and that they will reach that decision based solely upon evidence produced at trial. *See State v. Honeycutt*, 285 N.C. 174, 179, 203 S.E.2d 844, 848 (1974), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1207 (1976). Here, it can only be concluded from Juror Michael's statements that although he would try to be fair to defendant, he might have trouble doing so as a result of his financial concerns.

Moreover, this failure to allow the challenge for cause was prejudicial error. After defendant used a peremptory challenge to excuse Michael, and after defendant exhausted his peremptory challenges, he renewed his challenge for cause to Michael and told the court that he would have peremptorily challenged a different juror if he had not exhausted his peremptory challenges. Because defendant was deprived of the right to exercise a peremptory challenge as a result of the court's denial of his challenge for cause to Juror Michael, there must be a new trial. *See Hightower*, 331 N.C. at 641, 417 S.E.2d at 240; *Hartman*, 344 N.C. at 459, 476 S.E.2d at 335-36.

[3] We do not discuss defendant's other assignments of error because the questions they raise may not arise at a new trial. *See Hightower*, 331 N.C. at 642, 417 S.E.2d at 241. This includes defend-

ant's assignments of error pertaining to the denial of his pretrial motion to suppress certain alleged custodial statements by defendant. It is well-established that

> [a] trial court's ruling on a motion *in limine* is preliminary and is subject to change depending on the actual evidence offered at trial. The granting or denying of a motion *in limine* is not appealable. To preserve the evidentiary issue for appeal where a motion *in limine* has been granted, the non-movant must attempt to introduce the evidence at trial.

*Condellone v. Condellone,* 129 N.C. App. 675, 681, 501 S.E.2d 690, 695, *disc. review denied,* 349 N.C. 354, 517 S.E.2d 889 (1998) (citations omitted). Thus, defendant is not entitled to appellate review of the trial court's denial of his pretrial motion to suppress, in that the new trial has not yet occurred. Defendant will only be entitled to appellate review of the admissibility of this evidence if, at the new trial, the state attempts to admit the evidence, defendant objects to admission of the evidence, and the trial court rules to admit the evidence.

New trial.

Judges GREENE and McCULLOUGH concur.