STATE OF NORTH CAROLINA v. MICHAEL EUGENE REED, II

No. 232PA01

(Filed 1 February 2002)

**Jury— selection—challenge for cause—financial concerns about potential impact of jury service**

The trial court did not err in a first-degree murder case by failing to allow defendant's challenge for cause under N.C.G.S. § 15A-1212(9) of a prospective juror who expressed financial concerns about the potential impact of jury service even though defense counsel alleges it showed the prospective juror could not render a fair and impartial decision, because: (1) although the juror stated the length of the trial might interfere with his ability to decide or possibly be a fair juror, an examination of his answers throughout the entire voir dire reveals there is no indication that he would not or might not be able to follow the law as given to him by the trial court; (2) the prospective juror repeatedly stated during both the State's and defendant's voir dire that

he could follow the law; and (3) the prospective juror stated during both the State's and defendant's voir dire that he had no outside distractions, that he could be fair to both sides, and that he could listen to all the evidence fairly.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 143 N.C. App. 155, 545 S.E.2d 249 (2001), ordering a new trial on judgments entered 30 March 1999 by Hyatt, J., in Superior Court, Catawba County. Heard in the Supreme Court 15 November 2001.

*Roy Cooper, Attorney General, by Buren R. Shields, III, Assistant Attorney General, for the State-appellant.*

*Mark L. Killian for defendant-appellee.*

LAKE, Chief Justice.

Defendant, Michael Eugene Reed, II, was indicted on 7 July 1997 for two counts of first-degree murder and was tried capitally before a jury at the 1 March 1999 Criminal Session of Superior Court, Catawba County. The jury found defendant guilty of one count of first-degree murder by lying in wait and one count of first-degree murder on the basis of malice, premeditation and deliberation. After a capital sentencing proceeding, the jury recommended life imprisonment on both counts. The trial court sentenced defendant to two consecutive terms of life imprisonment without parole. Defendant appealed to the Court of Appeals as of right. On 17 April 2001, a unanimous panel of the Court of Appeals concluded the trial court's failure to allow defendant's challenge for cause to a prospective juror was prejudicial error and ordered a new trial. On 3 May 2001, the State filed with this Court a petition for discretionary review, which the Court granted on 7 June 2001. The sole issue allowed for review by this Court is whether the trial court erred in refusing to allow defendant's challenge for cause to a prospective juror.

A review of the record reflects that following the trial court's initial questioning of all prospective jurors and the State's *voir dire*, the defense attorney began *voir dire* of the twelve prospective jurors passed by the State to the defense. At the start of questions to prospective juror Michael, the defense attorney asked, "[A]re there any particular concerns about any of the questions or statements that have been made here?" The following colloquy ensued:

STATE v. REED

[355 N.C. 150 (2002)]

A. Only on the time period that would be a possible problem for me.

Q. Four to five weeks long trial.

A. Yes.

Q. What concerns you about that?

A. Well, financial obligations for my house payment and stuff and bills. I would not be able to pay them if I am here for that period of time. That would be really on my mind a lot of the time.

Q. Do you think that would be in your thoughts to the point that it would be hard for you to pay attention to the testimony at times in the case?

A. Yes, to a certain degree for the sooner I get done the sooner [I'm] able to get back to work and pay my bills and [meet] my obligations.

Q. Do you think then that might be a factor in your listening to the evidence and deciding the case and deciding the circumstances?

A. It may because like I said, sooner we get finished, the sooner I would be back to my regular schedule and my financial matters.

Q. You are saying it might become hard for you to pay attention and listen to the evidence for you might become impatien[t] and that might interfere with you[r] ability to be a fair [juror]?

A. I might not take my time in the whole proceeding. I think it would interfere with that, yes.

Q. Do you think it might . . . cause you to come to some quick decision knowing the sooner you do that, the sooner you can leave and go back to work?

A. Actually, you know, sooner [I get] done the sooner I get out. It may pose a problem for me.

Q. Do you think it [would] impair your ability to listen to the evidence in the case [fairly]?

A. Yes, I do.

Q. You do?

A. Yes.

**STATE v. REED**

[355 N.C. 150 (2002)]

At this point, defense counsel asked the trial court to excuse prospective juror Michael for cause. The trial court denied defendant's motion. After the trial court's ruling, defense counsel continued to question this prospective juror. When questioning Michael about his views on the death penalty, defense counsel asked, "[Do] you think that you can listen to all of the evidence fairly?" Michael responded, "Yes. I don't see anything that would interfere with me doing that in this case." Later, during defense counsel's questioning of prospective juror Michael, counsel returned to the subject of Michael's concern with his financial situation, with the following exchange:

Q. Let me talk about your concern about your financial concern and situation. If you [sit] here for the amount of time and we get to the end of the trial and you were called upon to make the decision, and you have said you don't care what the opinion is of the other jurors, if you were the only one that [was] of the opinion you held and the case could not be over unless you changed your mind, would you then change due [to] the pressure of the financial situation you may have?

A. That puts me in a bad spot. You know what I'm saying. That would really have weight on my mind and I really could not tell you what I would do until I was put in that situation. That is what is hard for me.

Q. Well, what you are telling me, do you think that it might or would have some effect?

A. Yes sir . . . madam.

Q. And on your ability to serve?

A. Most definitely, yes.

Q. On your ability to render a decision in accordance with your own beliefs?

A. Right, because like I said, I will not be out there doing my job and I will be on the street and walking because I just cannot pay my bills.

Q. Exactly.

A. I . . . that would make a difference to me really, you know.

Q. We are looking for jurors in this case that can make the decision, the biggest decision any juror can ever be called upon to make.

A. [That's a lot] to think about.

Q. And that is one of your concerns, having that weigh on your mind and when you are trying to make that decision?

A. Yes.

Q. You feel that would [affect] you?

A. I would not want my problems to override my decision.

Q. And you think that it could do that if you were forced to be here that long?

A. It may. It would probably do so.

Q. Okay.

At this point, defense counsel renewed her challenge for cause of prospective juror Michael. The trial court denied defendant's second challenge. Defendant then employed a peremptory challenge to excuse Michael. After exhausting his peremptory challenges, defendant again renewed the previous challenge for cause of prospective juror Michael. The trial court denied defendant's motion. Defendant requested additional peremptory challenges; and, the trial court also denied this motion.

On appeal, after correctly determining defendant preserved the issue for appeal, the Court of Appeals concluded the trial court's failure to allow defendant's challenge for cause to prospective juror Michael was prejudicial error and ordered a new trial. Specifically, the Court of Appeals found that Michael's answers regarding his financial concerns indicated he could not render a fair and impartial decision and that defendant's challenge for cause should have been allowed pursuant to the catchall provision of N.C.G.S. § 15A-1212, which states in part that "[a] challenge for cause to an individual juror may be made . . . on the ground that the juror . . . [f]or any other cause is unable to render a fair and impartial verdict." N.C.G.S. § 15A-1212(9) (1999). The Court of Appeals also determined the trial court deprived defendant of his right to exercise a peremptory challenge because defendant used a peremptory challenge to excuse prospective juror Michael, exhausted his peremptory challenges and informed the trial court he would have peremptorily challenged a different juror if he had not exhausted his challenges.

STATE v. REED

[355 N.C. 150 (2002)]

The State contends that based on the totality of the *voir dire*, the trial court's denial of defendant's challenge for cause, because of prospective juror Michael's concern about the potential financial impact of jury service, was not an abuse of discretion. The State further contends the Court of Appeals improperly substituted its judgment for that of the trial court and did not correctly apply the abuse of discretion standard. We agree.

The determination of whether excusal for cause is required for a prospective juror is vested in the trial court, N.C.G.S. § 15A-1211(b) (1999), and the standard of review of such determination is abuse of discretion. Such rulings by a trial court will not be overturned on appeal, unless an "abuse of discretion" is established. *State v. Fair*, 354 N.C. 131, 144, 557 S.E.2d 500, 512 (2001) (citing *State v. Hill*, 347 N.C. 275, 288, 493 S.E.2d 264, 271 (1997), *cert. denied*, 523 U.S. 1142, 140 L. Ed. 2d 1099 (1998)). An "abuse of discretion" occurs where the trial judge's determination is " 'manifestly unsupported by reason' " and is " 'so arbitrary that it could not have been the result of a reasoned decision.' " *State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 832 (1985)). With regard to a challenge for cause and the trial court's ruling thereon, "the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *Wainwright v. Witt*, 469 U.S. 412, 434, 83 L. Ed. 2d 841, 858 (1985).

The trial court holds a distinct advantage over appellate courts in determining whether to allow a challenge for cause. In *Wainwright*, the United States Supreme Court stated:

" 'Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.' *Boyd v. Boyd*, 252 N.Y. 422, 429, 169 N.E. 632, 634 [(1930)]."

*Wainwright v. Witt*, 469 U.S. at 434, 83 L. Ed. 2d at 858 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434, 74 L. Ed. 2d 646, 659 (1983)).

The standard for determining whether a prospective juror must be excluded for cause is whether the prospective juror's concern

"would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Id.* at 424, 83 L. Ed. 2d at 851-52 (quoting *Adams v. Texas,* 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)), *quoted in State v. Mitchell,* 353 N.C. 309, 314, 543 S.E.2d 830, 834, *cert. denied,* —— U.S. ——, 151 L. Ed. 2d 389 (2001). Whether this standard has been satisfied is also "within the trial court's broad discretion." *Mitchell,* 353 N.C. at 314, 543 S.E.2d at 834. The standard does not require "clarity in the printed record," but rather, with regard to the proper basis for excusal, rests on whether a trial judge is "left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Wainwright,* 469 U.S. at 425-26, 83 L. Ed. 2d at 852.

On appeal, "[r]eviewing courts are required to pay deference to the trial court's judgment concerning the juror's ability to follow the law impartially." *State v. Taylor,* 354 N.C. 28, 40, 550 S.E.2d 141, 150 (2001) (citing *State v. Davis,* 325 N.C. 607, 624, 386 S.E.2d 418, 426 (1989), *cert. denied,* 496 U.S. 905, 110 L. Ed. 2d 268 (1990)). To determine whether a prospective juror is capable of rendering a fair and impartial verdict, the trial court must "reasonably conclude from the *voir dire* . . . that a prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence." *State v. Jaynes,* 342 N.C. 249, 270, 464 S.E.2d 448, 461 (1995), *cert. denied,* 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996), *and quoted in State v. Golphin,* 352 N.C. 364, 420, 533 S.E.2d 168, 207 (2000), *cert. denied,* —— U.S. ——, 149 L. Ed. 2d 305 (2001).

The Court of Appeals determined that prospective juror Michael asserted that "his financial concerns might affect his ability to render a fair decision" and concluded that "although he would try to be fair to defendant, he might have trouble doing so as a result of his financial concerns." *State v. Reed,* 143 N.C. App. 155, 161, 545 S.E.2d 249, 253 (2001). Defendant contends that Michael was unable to render a fair and impartial verdict based upon his concern with the possible financial impact on him of a long trial, and thus the Court of Appeals was correct in concluding the excusal of prospective juror Michael was required. We disagree.

During jury selection, the trial court initially informed the entire panel of their duties as jurors and questioned the panel, including Michael, on the ability of each prospective juror to follow the law as it pertained to the presumption of innocence, the burden of proof and

the law on sentencing. Prospective juror Michael responded "yes" to each question by the trial court concerning whether he could follow the law. Michael clearly stated that he understood the burden of proof, the punishments for first-degree murder, and the duty of a jury and stated that any personal convictions he had about the death penalty would not interfere with his ability to fulfill that duty.

The prosecutor also questioned Michael about his experience in court as a witness in a prior unrelated case, and he clearly stated, "No sir. I can be fair and treat everyone the same." When inquiring about prospective juror Michael's ability to follow the law, the prosecutor asked:

Q. Mr. Michael. If the State proves that the case . . . if the State proves its case to you from the evidence and the law and proves all the things necessary for a conviction of first-degree murder, and that is beyond a reasonable doubt, could you vote to find the defendant guilty of first-degree murder?

A. Yes, I can.

Q. And if we go to the second phase of the case, and we present those things to you that we must to get a recommendation of death as the verdict of the jury, would you vote for death?

A. Yes, I would.

Q. And if you are selected say the foreman of this jury, and it comes time to enter the verdict of life or death, are you strong enough to write the word, death, in the space on the form that will [be] given to the jury?

A. Yes, sir.

Q. Would you make us prove more than the law would make us prove for either a conviction of first-degree murder or for a recommendation of death as the punishment for the defendant?

A. No, I will follow the evidence and the law.

This exchange occurred after prospective juror Michael was aware of the estimated time frame.

The Court of Appeals also mentioned the fact that the actual length of trial was one month, suggesting that this fact supports its opinion. However, as noted, during *voir dire* prospective juror Michael was given estimates of the length of trial, by both the State

and defense counsel, and Michael was questioned about any problems this might bring. During the State's *voir dire,* counsel estimated a two- to three-week trial and indicated it could take more or less time than estimated. The State then stated: "So understanding that time frame that we are talking about, probably two weeks and probably three weeks, there are certain questions that I will ask now." The prosecutor indicated the ensuing questions he planned to ask were an attempt to "determine if you are the type of juror that can be fair and impartial to both sides and if the trial were to take two weeks and [possibly] three, would that fit into your being the type of juror that we want from both sides on this case." One of these questions inquired whether anyone had "any outside distractions" such as a spouse's surgery or a child just out of the hospital or "anything of that nature that is so important to [them] that it would be in [their] mind[s] or on [their] mind[s] every day to where [they] could not pay close attention to the testimony and what is taking place in the courtroom." Prospective juror Michael did not indicate any such distractions existed which would prevent him from paying close attention throughout the length of trial. In addition, during defendant's *voir dire,* defense counsel estimated a four- to five-week trial and inquired whether the increase in length changed anyone's personal situation so that it would become a hardship for a juror to serve. For a second time, Michael did not suggest the trial length would cause him any sort of hardship.

Prospective juror Michael did not indicate he had any financial concerns which "might" interfere with his ability to be a fair juror until later during defendant's *voir dire.* The discussions between defense counsel and Michael, as set forth above, are the only transcript references cited in the Court of Appeals' opinion. However, our review of the entire transcript reveals that, in later discussions between defense counsel and prospective juror Michael, he reaffirmed his ability to perform his duty as a juror several times. Defense counsel questioned Michael about his views on the death penalty and asked whether anything about the death penalty might affect his ability to listen to evidence and be fair. Prospective juror Michael responded, "No. I don't see anything." Defense counsel then asked, "[Do] you think that you can listen to all of the evidence fairly?" He replied, "Yes. I don't see anything that would interfere with me doing that in this case." When asked about mitigating circumstances and if he found a circumstance no one else found, could he stand by it, prospective juror Michael answered, "Yes I would." When asked if he

would hold it against defendant if defendant did not testify, Michael answered, "I could listen to it with an open mind and hear it even [though] he did not testify or produce any evidence at all and it would not cause me to be more towards the State than to him." Defense counsel asked whether Michael was willing to follow the instructions of the trial court without forming an opinion until told to do so and whether he could listen to the law and evidence without making up his mind until told to do so. He answered "yes" to both questions. Prospective juror Michael also told defense counsel he could keep an open mind until the trial court instructed him otherwise or until he went back to the jury room to decide the case.

Defendant contends that, under a plain reading of N.C.G.S. § 15A-1212(9), a defendant is allowed to excuse a juror for cause if that juror for any reason is unable to render a fair and impartial verdict. This statute in subsections (1) through (8) lists specific grounds for challenges for cause, while subsection (9), the catchall, states, "[f]or any other cause [the juror] is unable to render a fair and impartial verdict." As discussed above, this determination rests solely in the trial court's discretion and shall not be overturned on appeal unless there exists an abuse of discretion. *State v. Fair*, 354 N.C. at 144, 557 S.E.2d at 512.

The Court of Appeals cited *State v. Hightower*, 331 N.C. 636, 417 S.E.2d 237 (1992), in support of its conclusion that the trial court erred. In *Hightower*, the defendant challenged for cause a juror's stated concern over his ability to render a fair and impartial verdict if the defendant failed to testify. *Id.* at 637, 417 S.E.2d at 238. The juror stated the defendant's failure to testify would "stick in the back of [his] mind" and that it "might hinder" his ability to give an impartial decision. *Id.* at 641, 417 S.E.2d at 240. This Court held the trial court erred in not allowing the challenge for cause of that juror. This case is distinguishable from *Hightower*. Although prospective juror Michael stated the length of trial "might" interfere with his ability to decide or possibly be a fair juror, when his answers throughout the entire *voir dire* are examined, there is no indication that he would not or might not be able to follow the law as given to him by the trial court, as was the case in *Hightower*. On the contrary, Michael repeatedly stated during both the State's and defendant's *voir dire* that he could follow the law. In addition, prospective juror Michael clearly stated during both the State's and defendant's *voir dire* that he had no outside distractions, that he could be fair to both sides and that he could listen to all the evidence fairly.

The underlying concern raised as to prospective juror Michael's ability "to render a fair and impartial verdict" because of the estimated time of trial, as expressed in the Court of Appeals' opinion, is certainly understandable as a real concern in light of the *voir dire* of Michael, which was extensive by both the State and the defense. However, this is a concern which is routinely faced and determined by our trial judges in both civil and criminal cases, particularly where the trial is expected to last beyond several days or a week. Our trial judges are normally presented with this concern by a significant number of our citizens who unfortunately place a higher value on their personal time and convenience than on the performance of this most valuable civic duty. This is particularly true where, as here, the question of time is emphasized and revisited. In the normal course, virtually every prospective juror, and especially those most competent to serve, would have some level of concern, whether or not expressed, about time taken from their usual pursuits, and when such concern is expressed, our trial judges routinely decide whether to excuse based on what they have observed and heard.

The prospective juror in the case *sub judice* clearly was concerned about the possible impact the time of trial would have on him, and clearly he hoped he would not have to serve. To his credit, he also clearly and consistently stated, in light of the estimated time frame, that he could and would follow the law and would "be fair and impartial to both sides." Therefore, an examination of the entire *voir dire* presents no indication that the trial court's decision was " 'manifestly unsupported by reason' " or was " 'so arbitrary that it could not have been the result of a reasoned decision.' " *State v. T.D.R.*, 347 N.C. at 503, 495 S.E.2d at 708 (quoting *White v. White*, 312 N.C. at 777, 324 S.E.2d at 832). To the contrary, the *voir dire* reflects an abundant basis to conclude that this prospective juror would make a good juror, and thus the trial court's rulings were "fairly supported by the record." *Wainwright v. Witt*, 469 U.S. at 434, 83 L. Ed. 2d at 858. Thus, we conclude that the trial court's refusal to grant a challenge for cause for prospective juror Michael was not an abuse of discretion and that no prejudicial error occurred as a result of such rulings.

The Court of Appeals' decision is therefore

REVERSED.