STATE OF NORTH CAROLINA v. HERBERT MARSHALL PENDER, JR

No. COA11-647

(Filed 17 January 2012)

**1. Jury—selection—prior knowledge of case—excusal for cause not granted**

The trial court did not abuse its discretion by not excusing a juror for cause where the juror indicated that he would do his best to ignore prior knowledge. The trial court was very careful to give considerable attention to whether the prior knowledge would impair the juror's ability to fairly evaluate the evidence as presented in court and in accordance with the directions of the trial court.

STATE v. PENDER

[218 N.C. App. 233 (2012)]

**2. Jury—Batson challenge—race neutral explanations— burden of persuasion not carried**

The trial court did not err by denying defendant's *Batson* challenge where the State offered race-neutral explanations for each of its peremptory challenges to the satisfaction of the trial court and defendant failed to meet his burden of persuasion.

**3. Discovery—failure to supplement discovery—remedies**

The trial court did not abuse its discretion by not granting a mistrial when the State failed to supplement discovery after a meeting with the co-defendant. The remedies ordered by the court were permitted by statute, were not arbitrary, and the trial court's actions were entirely appropriate under the circumstances of the case.

**4. Criminal Law—self-defense—notice not provided—not supported by evidence**

There was no error in a first-degree murder prosecution in the denial of defendant's requested jury instruction on voluntary manslaughter based on imperfect self-defense. Defendant did not provide the notice required by statute for self-defense and the evidence was not sufficient for the instruction; moreover, any error was harmless because the totality of the evidence indicated that defendant was the aggressor.

Appeal by defendant from judgment entered 15 December 2010 by Judge Milton F. Fitch, Jr., in Wilson County Superior Court. Heard in the Court of Appeals 9 November 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

*Marilyn G. Ozer for defendant-appellant.*

Bryant, Judge.

Where the trial court conducted a detailed inquiry and satisfied itself that a juror could be impartial and follow the court's instructions, there was no abuse of discretion. Where defendant failed to meet his burden of persuasion, the trial court did not err in denying defendant's *Batson* motion. Where the trial court took appropriate actions to minimize potential discovery violations, there was no abuse of discretion in denying defendant's motion for mistrial. Where defendant was the aggressor, the trial court did not err in denying defendant's request for a jury instruction on imperfect self-defense.

STATE v. PENDER

[218 N.C. App. 233 (2012)]

*Facts and Procedural History*

Herbert Pender ("Defendant") was indicted on 6 April 2009 for first-degree murder pursuant to N.C. Gen. Stat. § 14-17. His first trial, which began on 12 July 2010, ended in a mistrial. A second trial began on 29 November 2010.

The State's evidence at defendant's second trial tended to show the following: a fight broke out between rival gangs early in the morning of 16 August 2008. Defendant was set leader of one of the gang's members, Julius Barnes, involved in the fight. The other rival gang member involved in the fight was Curtis Wellington, who was killed by defendant later that day.

Around 7:00 a.m. on 16 August 2008, Sergeant Boykin of the Wilson Police Department responded to a (shots fired) call. At the scene, defendant informed Sergeant Boykin that he and his girlfriend had just been targeted by gunfire as they left a residence at 105 Lee Street. The shooters fled in a gold Ford Taurus.

After briefly speaking with Sergeant Boykin, defendant notified members of his set, including Barnes and William Brown, to come and meet him. Once they convened, the group loaded a van with various weapons and firearms as they looked for defendant's attackers. After driving around town for several hours, the group stopped for dinner at a local restaurant. While outside the restaurant, a security camera captured defendant making a hand gesture known as a "One-Eye Willie" toward someone across the street. Testimony from William Brown revealed that this hand signal meant that the individual marked was their intended target.

The group then drove to the target's house, but he was not there so they proceeded to A&J Food Mart, a nearby convenience store. While waiting in the parking lot of the convenience store, Curtis Wellington and other rival gang members stopped at the convenience store and confronted defendant. Wellington and defendant exchanged words before defendant went to the van and retrieved his .9 millimeter rifle. Defendant, Barnes, and Brown then opened fire at Wellington and the other rival gang members before ultimately killing Wellington and wounding another. Wellington, according to Brown, was unarmed and never pointed a gun at defendant. After the shooting, defendant and his group fled the scene in the van, leaving behind twelve or thirteen casings from their three weapons. Defendant was subsequently captured by police in Virginia while still in possession of a .9 millimeter rifle.

On 15 December 2010, a jury found defendant guilty of first-degree murder. Defendant was sentenced to life imprisonment without parole. Defendant appeals.

--------

Defendant contends the trial court erred (I) in failing to excuse a juror for cause; (II) in denying defendant's *Batson* motion; (III) in denying defendant's motion for mistrial; and (IV) in denying defendant's request for a jury instruction on imperfect self-defense.

*I*

**[1]** Defendant first argues the trial court erred in failing to excuse a juror for cause in violation of defendant's right to an impartial jury. We disagree.

According to N.C.G.S. § 15A-1211(b), "[t]he trial judge must decide all challenges to the panel and all questions concerning the competency of jurors." The standard of review for a defendant's challenge to excuse a juror for cause is abuse of discretion. *State v. Reed*, 355 N.C. 150, 155, 558 S.E.2d 167, 171 (2002). "An abuse of discretion occurs where the trial judge's determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (internal quotations omitted). "With regard to a challenge for cause and the trial court's ruling thereon, 'the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record.' " *Id.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 434, 83 L. Ed. 2d 841, 858 (1985)). In deciding whether a prospective juror should be excluded for cause, the trial court must determine whether the prospective juror's apprehension "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985).

Here, defendant alleges that Juror #8 should have been excused for cause based on his comments during voir dire, specifically that he knew "things that [he] probably shouldn't know, knowing some of the details." Asked to elaborate, Juror #8 stated that he learned about this case primarily by reading about it in the newspaper. Based on Juror #8's comments, the trial court and defendant inquired further as to whether he could in fact follow the law and be impartial. Juror #8 replied that he "would do my best. All I can tell you is that I will try." Not quite satisfied, the court and Juror #8 engaged in the following discussion:

STATE v. PENDER

[218 N.C. App. 233 (2012)]

The Court: The question was, sir, having read what you read, number one, did you form an opinion about it? And, number two, now that you have read, if you remember what you read, can you put that aside, do your duty, hear the evidence as it comes from that witness stand and make a decision based on the evidence as you hear it come from the witness stand? That's the question.

PROSPECTIVE JUROR #8: Yeah, I think I can.

Based on his response, defendant attempted to strike Juror #8 for cause but his motion was denied by the court. Defendant further inquired of Juror #8 as follows:

[Defense Counsel]: You believe you could do the best you could. My question is, sir, do you think you can block out that? You said that you had reached—I can't remember my exact question—you reached an opinion as to guilt or innocence based on what you read. Are you certain, sir, that you can put that aside?

PROSPECTIVE JUROR #8: Again, I think I can. I believe I could put it aside.

Still concerned, defendant renewed his motion to strike and requested an additional peremptory challenge. The court again denied the motion to strike and replied that "[b]ased on the answer given by [Juror #8] I deny the challenge."

After review, we find the trial court did not abuse its discretion in denying defendant's motion to strike Juror #8 for cause or his request for an additional peremptory challenge. In circumstances such as this "[w]here the trial court can reasonably conclude from the voir dire examination that a prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence, excusal is not mandatory." *State v. Green*, 336 N.C. 142, 167, 443 S.E.2d 14, 29, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). Further, "[t]he trial court has the opportunity to see and hear a juror and has the discretion, based on its observations and sound judgment, to determine whether a juror can be fair and impartial." *State v. Dickens*, 346 N.C. 26, 42, 484 S.E.2d 553, 561 (1997).

In the instant case the trial court was very careful to give considerable attention to its determination of whether Juror #8's prior

knowledge of the case would impair his ability to fairly evaluate the evidence as presented in court and in accordance with instructions of the trial court. Based on Juror #8's affirmative responses both to the court and to defense counsel, the trial court was satisfied that Juror #8 could be fair and impartial and that he could set aside any prior impressions he may have drawn from media coverage and follow the court's instructions as to the law. Therefore, the trial court did not err in denying defendant's challenge to excuse Juror #8 for cause.

*II*

**[2]** Defendant also contends the State used six of its peremptory challenges to excuse prospective African-American jurors in violation of defendant's constitutional right to equal protection. We disagree.

"[T]he Equal Protection Clause [of the Fourteenth Amendment to the United States Constitution and Article I, Section 26 of the North Carolina Constitution] forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89, 90 L. Ed. 2d 69, 83 (1986), *holding modified by Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411 (1991). In *Batson*, the Supreme Court "outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause." *Hernandez v. New York*, 500 U.S. 352, 358, 114 L. Ed. 2d 395, 405 (1991). Step one requires that defendant "make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race." *Id.* If defendant makes such a showing, then in step two "the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question." *Id.* at 358-59, 114 L. Ed. 2d at 405. Thereafter, step three requires the trial court to "determine whether the defendant has carried his burden of proving purposeful discrimination." *Id.* at 359, 114 L. Ed. 2d at 405. " 'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision-maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 360, 114 L. Ed. 2d at 406 (quoting Personnel *Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, 60 L. Ed. 2d 870, 887-88 (1979) (footnote and citation omitted)).

However, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on

the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *State v. Lemons*, 348 N.C. 335, 361, 501 S.E.2d 309, 325 (1998), *sentence vacated on other grounds*, 527 U.S. 1018, 144 L. Ed. 2d 768 (1999) (internal quotation omitted). At that point "the only issue. for [] determin[ation] is whether the trial court correctly concluded that the prosecutor had not intentionally discriminated." *Id.* Because "the trial court is in the best position to assess the prosecutor's credibility, we will not overturn its determination absent *clear error." Id.* (citation omitted) (emphasis added).

In response to defendant's assertion that six prospective jurors were excused by the State because of impermissible racial discrimination, the trial court conducted a *Batson* hearing. During this hearing, the State offered race-neutral explanations to the trial court explaining exactly why it excused each of these jurors. The State's reasons included unresponsiveness, deceit, failure to make eye contact, alleged acquaintance with defendant's former girlfriend, an extensive history of purchasing pawn tickets, and prior employment at the convenience store where the incident occurred. After weighing these race-neutral explanations, the trial court stated in its order denying defendant's *Batson* motion that:

11.  The Court makes no finding that Defendant established a prima facie case of impermissible discrimination, and that "the strikes were not made based off race but were made based off of other factors to which the State does not have to disclose and the State in disclosing gave reasons to the satisfaction of this Court that the strikes were not based off of race," and Defendant has not demonstrated purposeful discrimination.

Defendant argues that he has indeed demonstrated purposeful discrimination and that the trial court clearly erred when it concluded in its order that the State's race-neutral reasons for striking each of these witnesses satisfied *Batson*. Contrary to defendant's assertion, we do not find clear error in the record that would support defendant's argument.

It is well-established that counsel's "explanations need not rise to the level justifying a challenge for cause, and need not be persuasive, or even plausible. In fact, the challenges may be based on . . . counsel's legitimate hunches and past experience." *State v. Cofield*, 129 N.C. App. 268, 277, 498 S.E.2d 823, 830 (1998) (internal citation and quotations omitted). "At this step of the inquiry, the issue is the facial

validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez* at 360, 114 L. Ed. 2d at 406 (internal quotation omitted). As a result, "evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Id.* at 365, 114 L. Ed. 2d at 409 (internal quotation omitted).

After careful review, we cannot find error that would justify overturning the trial court's ruling. The State offered race-neutral explanations for each of its peremptory challenges to the satisfaction of the trial court. As a result, defendant has failed to meet his burden of persuasion regarding the prosecutor's racial motivation. *See Purkett v. Elem*, 514 U.S. 765, 768, 131 L. Ed. 2d 834, 839 (1995) ("[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."). Accordingly, we hold the trial court did not err in denying defendant's *Batson* motion.

*III*

[3] Next, defendant argues his motion for a mistrial should have been granted when the State failed to supplement discovery after meeting with the co-defendant. We disagree.

"Defendant's rights to discovery are statutory. Constitutional rights are not implicated in determining whether the State complied with these discovery statutes." *State v. Ellis*, ____ N.C. App. ____, ____, 696 S.E.2d 536, 539 (2010). We review a ruling on discovery matters for an abuse of discretion. *State v. Shannon*, 182 N.C. App. 350, 357, 642 S.E.2d 516, 522 (2007). "An abuse of discretion will be found where the ruling was so arbitrary that it cannot be said to be the result of a reasoned decision." *State v. Tuck*, 191 N.C. App. 768, 771, 664 S.E.2d 27, 29 (2008).

Discovery applies to both oral and written statements made by witnesses. Regarding oral statements, N.C.G.S. § 15A-903(a)(1) requires that,

> [o]ral statements shall be in written or recorded form, except that oral statements made by a witness to a prosecuting attorney outside the presence of a law enforcement officer or investigatorial assistant shall not be required to be in written or recorded form unless there is *significantly new or different information* in the oral statement from a prior statement made by the witness.

(2011) (emphasis added). If the trial court determines that one of the parties has failed to comply with N.C.G.S. § 15A-903(a)(1), then the trial court can issue any or all of the following sanctions:

> (1) Order the party to permit the discovery or inspection, or (2) Grant a continuance or recess, or (3) Prohibit the party from introducing evidence not disclosed, or (3a) Declare a mistrial, or (3b) Dismiss the charge, with or without prejudice, or (4) Enter other appropriate orders.

N.C.G.S. § 15A-910(a) (2011). "Although the court has the authority to impose such discovery violation sanctions, it is not required to do so." *State v. Hodge*, 118 N.C. App. 655, 657, 456 S.E.2d 855, 856-57 (1995) (citations omitted).

Here, defendant argues that his motion for a mistrial should have been granted after the State failed to provide defendant with additional discovery after a meeting with William Brown gleaned new information crucial to the State's case. Defendant argues that the testimony of William Brown regarding the hand signal known as a "One-Eye Willie," the relative positions of the parties during the shootout, and an account of decedent Wellington's collapse to the ground during the shootout was significantly new or different information that should have been disclosed.

In response to Brown's direct testimony, the trial court recognized potential discovery violations by the State and instructed defense counsel to use cross-examination to uncover any discrepancies in Brown's testimony. During cross-examination, Brown admitted going over movements of the participants in the shootout during a meeting with the State that morning. Based on this testimony, defendant renewed his objection and motion for a mistrial. The trial court heard defendant's objection and recited the elements of N.C.G.S. § 15A-910(a)(1) to both parties before stating:

> I'll grant you a recess, Mr. Sutton, for you to delve into that particular matter. I do not at this time consider what you have said to be a failure to comply with the discovery such a material fact at this point in time [sic] that would warrant, under the totality of the circumstances, a dismissal with or without prejudice or a mistrial in this matter.

After recess, the trial court also ordered the State to memorialize all future discussions with Brown.

Despite defendant's arguments, we do not find that the trial court committed an abuse of discretion regarding its handling of these potential discovery violations by the State. "[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Remley*, 201 N.C. App. 146, 150, 686 S.E.2d 160, 162 (2009) (citation omitted). "Which of the several remedies available under G.S. 15A—910(a) should be applied in a particular case is a matter within the trial court's sound discretion." *State v. Kessack*, 32 N.C. App. 536, 541, 232 S.E.2d 859, 862 (1977).

First, the trial court did not abuse its discretion by instructing defendant to use cross-examination to test whether witness Brown's testimony revealed significantly new or different information. *See State v. Jaaber*, 176 N.C. App. 752, 627 S.E.2d 312 (2006) (holding the trial court did not abuse its discretion in denying defendant's request for discovery sanctions given that defendant was able to cross-examine the witnesses). Second, the trial court did not abuse its discretion when it decided to "[g]rant a continuance or recess" to defendant to review the testimony of Brown. N.C.G.S. § 15A-910(a)(2) (2011); *see State v. Hocutt*, 177 N.C. App. 341, 628 S.E.2d 832 (2006) (trial court did not abuse its discretion when it denied defendant's motions to dismiss and for mistrial as sanction for state's discovery violations in first degree murder prosecution because the trial court allowed defendant additional time to review evidence and to determine if expert witnesses would be required to counter evidence.); *see also Remley*, 201 N.C. App. at 150, 686 S.E.2d at 162 (holding the trial court did not abuse its discretion by granting a recess in order to provide defendant with an opportunity to prepare after the trial court determined that the State failed to provide the defendant's statement in a timely manner). Third, the trial court did not abuse its discretion by requiring the State to memorialize all future conversations with Brown. *See* N.C.G.S. § 15A-910(a)(4) (2011) (the court can "enter other appropriate orders" as sanctions for any discovery violations). We find that all of the remedies ordered by the trial court in the instant case are permitted by statute and are not arbitrary; that they are the result of a reasoned decision by the trial court after careful consideration of the objections made by defendant.

Further, we find that the trial court did not err by denying defendant's motion for a mistrial, since "[a] mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *See Jaaber*, 176 N.C.

App. at 756, 627 S.E.2d at 314. The trial court's actions were entirely appropriate under the circumstances presented in this case. Defendant's argument is overruled.

## IV

**[4]** In his final argument, defendant contends the trial court erred in denying his request for a jury instruction on voluntary manslaughter based on imperfect self-defense. We disagree.

This Court reviews assignments of error regarding jury instructions *de novo*. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). According to N.C.G.S. § 15A-905 (c)(1), "the court must, upon motion of the State, order the defendant to:

> (1) Give notice to the State of the intent to offer at trial a defense of alibi, duress, entrapment, insanity, mental infirmity, diminished capacity, *self-defense*, accident, automatism, involuntary intoxication, or voluntary intoxication. Notice of defense as described in this subdivision is inadmissible against the defendant. Notice of defense must be given within 20 working days after the date the case is set for trial pursuant to G.S. 7A-49.4, or such other later time as set by the court.

(emphasis added). "If at any time during the course of the proceedings the court determines that a party has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers may . . . (3) [p]rohibit the party from introducing evidence not disclosed . . . ." N.C.G.S § 15A-910(a)(3) (2011). "Which of the several remedies available under G.S. 15A—910(a) should be applied in a particular case is a matter within the trial court's sound discretion." *See Kessack*, 32 N.C. App. at 541, 232 S.E.2d at 862. Accordingly, we will not reverse the trial court's decision unless there is an abuse of discretion. *State v. McClary*, 157 N.C. App. 70, 75, 577 S.E.2d 690, 693 (2003) (citation omitted). "An abuse of discretion results from a ruling so arbitrary that it could not have been the result of a reasoned decision or from a showing of bad faith by the State in its noncompliance." *Id.* (citation omitted).

Here, the State filed a motion requesting that defendant provide voluntary discovery outlining the defenses he intended to assert at trial. However, defendant failed to provide the State with the defenses or the requisite notice required to assert a theory of self-defense under N.C.G.S. § 15A-905 (c)(1). Further, because the evidence at trial was insufficient to require an instruction on self-

defense, the trial court did not err when it denied defendant's request to instruct the jury on voluntary manslaughter based on imperfect self-defense. N.C.G.S § 15A-910(a)(3) (2011). Accordingly, defendant's argument is overruled.

Assuming *arguendo* that the trial court did err by failing to instruct the jury on voluntary manslaughter based on imperfect self-defense, this error would be harmless. An instruction on imperfect self-defense should be given where a defendant "reasonably believes it necessary to kill the deceased to save himself from death or great bodily harm even if defendant (1) might have brought on the difficulty, provided he did so without murderous intent, and (2) might have used excessive force." *State v. Mize*, 316 N.C. 48, 52, 340 S.E.2d 439, 441-42 (1986).

Defendant asserts that the evidence showed that defendant was not armed, that he was just hanging out at the convenience store when Wellington drove up and jumped out of his car with a gun. However, the totality of the evidence at trial indicates that defendant was the aggressor in the confrontation between the rival gang members. The evidence tended to show the following: defendant stated "there would be consequences" after someone fired shots at him that morning; defendant barely spoke with police while they investigated the (shots fired) call; defendant and his gang members loaded up a van "more than usual" with weapons and drove around looking for the rival gang members; defendant made the "One-Eye Willie" signal to mark one of the rival gang members as their target; defendant and Wellington had a verbal confrontation at the convenience store; after the confrontation, defendant went to the van and retrieved his .9 millimeter rifle and started shooting at Wellington; and defendant and his gang members fired a total of twelve-thirteen shots at Wellington and the other rival gang members, ultimately killing Wellington and wounding another. Based on these facts, defendant's murderous intent therefore precludes a determination that defendant reasonably believed it necessary to kill decedent, which precludes an instruction on imperfect self-defense. *See Mize*, 315 N.C. at 52, 340 S.E.2d at 441-42 (holding that defendant was not entitled to an instruction on imperfect self-defense where defendant was the aggressor during the confrontation and possessed murderous intent according to the evidence presented at trial). As a result, the trial court did not err in declining to instruct the jury on voluntary manslaughter based on imperfect self-defense.

No error.

Judges ELMORE and STEPHENS concur.