STATE v. CARR

[229 N.C. App. 579 (2013)]

STATE OF NORTH CAROLINA
v.
JAMES ANTHONY CARR

No. COA13-259

Filed 17 September 2013

**Jury—selection—denial of challenge for cause—no abuse of discretion**

There was no abuse of discretion in the trial court's denial of defendant's challenge for cause of a prospective juror in a prosecution for first-degree murder and robbery where a friend of the prospective juror had been murdered in the 1980s and she was concerned about loopholes. She subsequently stated that she would vote in accordance with the facts presented at trial and the judge's instructions.

Appeal by Defendant from judgments entered 23 March 2012 by Judge James G. Bell in Cumberland County Superior Court. Heard in the Court of Appeals 28 August 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Sandra Wallace Smith, for the State.*

*Glenn Gerding for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

On 21 September 2009, Defendant James Anthony Carr was indicted for the first-degree murder of Sergio Sanchez, four counts of robbery with a dangerous weapon, and one count of conspiracy to commit robbery with a dangerous weapon. The evidence at trial tended to show the following: In the early morning hours of 12 April 2008, Defendant, his girlfriend, and three male friends were driving around Fayetteville. Defendant's girlfriend told the men she needed money to pay her rent and knew where they could find people to rob. She drove the men to a club called Sharky's and parked just down the street. Sharky's shared a building with another club called Kagney's, and, because the shared parking lot was full, many patrons of the clubs had parked on the street in front of the building that night.

Defendant was armed with a pistol-grip shotgun, and one of the other men carried a handgun. Defendant and his three friends first approached Army Sergeant Ruben Prado and two friends as they returned to their car after leaving Sharky's. Defendant and his accomplices robbed the soldiers of their cell phones, wallets, money, and keys at gunpoint. During the robbery, Prado was hit in the face, and another soldier was knocked to the ground and kicked repeatedly.

As the robbers left, Prado saw them approaching Sanchez, also a sergeant in the United States Army, who was serving as the designated driver for several friends at Kagney's. Sanchez had stepped outside the club to call his girlfriend, Erika Olivares. While speaking with Olivares, Sanchez began laughing and told Olivares that someone was asking him for his wallet. Olivares could hear a man say, "Give me your wallet," twice, the man's voice growing louder the second time. She told Sanchez to get away, but Sanchez told her not to worry. Then the phone went dead. Olivares called Sanchez repeatedly, but he did not pick up. Worried, Olivares called one of the Army buddies who had gone to Kagney's with Sanchez. Sanchez's friends rushed outside only to discover emergency personnel on the scene. Sanchez had been shot once in the neck and died of his injuries a few days later. Prado testified to seeing Defendant point the shotgun at Sanchez, but turned away before he heard a gunshot. One of Prado's friends saw Defendant shoot Sanchez and testified that Defendant went through Sanchez's pockets as he lay mortally wounded on the sidewalk. Defendant's accomplices also testified against him, confirming both the robberies of Prado's group and Defendant's role in robbing and shooting Sanchez.

Defendant was tried non-capitally at the 12 March 2012 session of superior court in Cumberland County. The jury found Defendant guilty of second-degree murder and all of the remaining charges. The trial court consolidated the murder and robbery charge as to Sanchez and imposed a sentence of 220-273 months in prison. The court consolidated the remaining convictions and sentenced Defendant to a consecutive term of 103-133 months. Defendant gave notice of appeal in open court.

### Discussion

Defendant's sole argument on appeal is that the trial court abused its discretion in denying Defendant's challenge for cause of Juror 4.[1] We disagree.

---

1. We refer to the prospective juror as "Juror 4" to protect her privacy.

**STATE v. CARR**

[229 N.C. App. 579 (2013)]

A defendant who appeals from a trial court's denial of his motion to excuse a prospective juror for cause faces a steep challenge:

> The determination of whether excusal for cause is required for a prospective juror is vested in the trial court, and the standard of review of such determination is abuse of discretion. Such rulings by a trial court will not be overturned on appeal, unless an abuse of discretion is established. An abuse of discretion occurs where the trial judge's determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision. With regard to a challenge for cause and the trial court's ruling thereon, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record.

> The trial court holds a distinct advantage over appellate courts in determining whether to allow a challenge for cause. . . .

> Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.

> The standard for determining whether a prospective juror must be excluded for cause is whether the prospective juror's concern would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. Whether this standard has been satisfied is also within the trial court's broad discretion. The standard does not require clarity in the printed record, but rather, with regard to the proper basis for excusal, rests on whether a trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.

> On appeal, reviewing courts are required to pay deference to the trial court's judgment concerning the juror's ability to follow the law impartially. To determine whether a

prospective juror is capable of rendering a fair and impartial verdict, the trial court must reasonably conclude from the *voir dire* . . . that a prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence.

*State v. Reed*, 355 N.C. 150, 155-56, 558 S.E.2d 167, 171-72 (2002) (citations and quotation marks omitted). Further,

even after a prospective juror initially voices sentiments that would normally make . . . her vulnerable to a challenge for cause, that prospective juror may nevertheless serve if the prospective juror later confirms that . . . she will put aside prior knowledge and impressions, consider the evidence presented with an open mind, and follow the law applicable to the case.

*State v. Rogers*, 355 N.C. 420, 430, 562 S.E.2d 859, 867 (2002) (citation omitted). "A judge who observes the prospective juror's demeanor as . . . she responds to questions and efforts at rehabilitation is best able to determine whether the juror should be excused for cause." *Id.*

During the State's *voir dire*, Juror 4 mentioned a friend who had been murdered in the early 1980s. Defense counsel later asked Juror 4 how that experience would affect her ability to sit on a jury in a murder case. Juror 4 replied, "The thing that affects me is there seems [sic] to be loopholes when a person is guilty and the loopholes allow them [sic] to get out of it, and I don't think that's justice." Defense counsel and Juror 4 continued to discuss the concept of legal "loopholes," and when defense counsel asked, "And that you would not be able to put [your feeling about loopholes] completely aside and, therefore, you don't think you could be fair and impartial in this case[,]" Juror 4 responded, "Correct."

During further questioning by counsel for Defendant and the State, Juror 4 repeated her concerns about loopholes and asserted that she would have to vote "her conscience" in regard to a defendant's guilt. However, as Defendant concedes, at the close of the *voir dire* of Juror 4, she stated that she would vote in accordance with the facts presented at trial and the judge's instructions on the law. The trial court denied Defendant's challenge of Juror 4 for cause, and Defendant exercised one of his peremptory challenges to excuse her. Later, after all three of his peremptory challenges were exhausted, Defendant requested an additional peremptory challenge as to Juror 10. The court denied this request

and also denied Defendant's subsequent renewal of his challenge for cause of Juror 4.

Defendant cites *State v. Leonard*, 296 N.C. 58, 248 S.E.2d 853 (1978), in support of his argument that the trial court abused its discretion in denying his challenge for cause as to Juror 4. However, *Leonard* is easily distinguishable. The jurors challenged for cause in that case stated that they would not acquit the defendant even if she "*introduced evidence that would satisfy [the jurors] that [the defendant] was insane*" at the time of the crime. *Id.* at 62, 248 S.E.2d at 855 (emphasis added). In other words, the *Leonard* jurors continued to assert that they could not "follow the law applicable to the case" and thus were never rehabilitated. *Rogers*, 355 N.C. at 430, 562 S.E.2d at 867. In contrast, Juror 4, after "initially voic[ing] sentiments that would normally make . . . her vulnerable to a challenge for cause, . . . later confirm[ed] that . . . she [would] put aside prior knowledge and impressions, consider the evidence presented with an open mind, and follow the law applicable to the case." *Id.* Mindful that the trial court "judge who observes the prospective juror's demeanor as . . . she responds to questions and efforts at rehabilitation is best able to determine whether the juror should be excused for cause[,]" *id.*, we are not persuaded that the court's determination that Juror 4 "would be []able to faithfully and impartially apply the law" was "manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision." *Reed*, 355 N.C. at 155-56, 558 S.E.2d at 171 (citations and quotation marks omitted). Accordingly, we see no abuse of discretion in the trial court's denial of Defendant's challenge for cause of Juror 4.

NO ERROR.

Judges BRYANT and DILLON concur.